UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARISELA A.,[1] | ) |
|         Plaintiff, | ) No. 23 CV 2128 ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| FRANK BISIGNANO, Commissioner of Social Security, | ) ) ) ) January 27, 2026 |
|         Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Marisela A. seeks disability benefits asserting that she is disabled by a combination of physical and mental impairments. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Marisela's remand request is denied:

**Procedural History**

Marisela filed a benefits application in February 2021 claiming disability onset on August 18, 2020. (Administrative Record ("A.R.") 20, 230-34.) After her application was denied at the administrative level, (id. at 100, 102-06), she sought and was granted a hearing before an Administrative Law Judge ("ALJ"), at which she and a vocational expert ("VE") testified, (id. at 36-70). The ALJ concluded in August 2022 that Marisela is not disabled. (Id. at 20-30.) After the Appeals Council denied

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Marisela's first name and last initial in this opinion to protect her privacy to the extent possible.

Marisela's request for review, (id. at 1-6), she sought judicial review, and the parties consented to this court's jurisdiction, 28 U.S.C. § 636(c); (R. 10).

## Analysis

Marisela argues that the ALJ: (1) inadequately supported her residual functional capacity ("RFC") findings that Marisela can lift and carry up to 20 pounds, frequently reach in all directions with her right arm, and occasionally perform fine and gross manipulations; and (2) failed to evaluate Marisela's symptom statements in accordance with current regulations. (See R. 14, Pl.'s Br. at 11-15.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court[ ] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*,

743 F.3d 1118, 1121 (7th Cir. 2014)). Viewing the record under this standard, remand is not warranted.

A.   **Symptom Evaluation**

The court turns first to Marisela's argument that the ALJ improperly evaluated her subjective symptom statements because such an error may require a reassessment of her RFC on remand. Marisela argues that the ALJ denied disability benefits based on an outdated and thus improper credibility assessment. (R. 14, Pl.'s Br. at 14); *see also* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). The ALJ must consider factors like medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors. SSR 16-3p. That said, the court will not disturb a subjective symptom evaluation that is logically based on specific findings and evidence. *See Murphy*, 759 F.3d at 815-16.

The court notes as an initial matter that the ALJ properly cited and applied the current standard for assessing Marisela's subjective symptom statements. (See A.R. 25-28 (citing 20 C.F.R. § 404.1529; SSR 16-3p).) Marisela's challenge here is based in part on unnecessary jabs she feels the ALJ took, including by asking Marisela during the administrative hearing whether her disabled husband and her daughter "do all the chores because of [Marisela's] hand." (R. 14, Pl.'s Br. at 14 (citing A.R. 54 (Q: "So, your daughter who works full-time and your husband who is disabled do all the chores because of your hand." A. "Yes.").) Marisela also takes issue with

3

the ALJ's use of "alleged" when stating in her written decision that Marisela worked at Blue Cross Blue Shield for 28 years. (Id. (citing A.R. 25 ("At the hearing, [Marisela] alleged that she worked for Blue Cross Blue Shield for 28 years.")).) But a claimant must do more than "nitpick." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Instead, she must "show that the ALJ's determination was not based on substantial evidence," *Id.*

Marisela next argues that the ALJ erred when comparing her symptom statements with the objective medical evidence. (R. 14, Pl.'s Br. at 14.) Specifically, Marisela complains the ALJ dismissed her statement that she cannot use her hands for more than 15 minutes or perform household chores based on a physical therapy record she says the ALJ mischaracterized. (Id. at 14-15.) The ALJ cited that record as indicating that in May 2022 Marisela "was enrolled in physical therapy for her back pain" and therapy notes "indicate that her therapy improved her ability to perform cleaning, dusting, washing overhead and overhead tasks." (A.R. 27.) In fact, that record states that Marisela had "made objective improvements with [range of motion], strength. These improvements have increased patient's ability to perform these tasks: cleaning, dusting, washing overhead, overhead tasks." (R. 18, Govt.'s Mem. at 9 (citing A.R. 911).) While Marisela does not contest the ALJ's summary of this portion of the physical therapy record, she says the ALJ failed to mention that the record also reports continued deficits in performing those tasks. (R. 14, Pl.'s Br. at 15; see also A.R. 911 (noting that despite improvements, Marisela "continues to present with [i]mpairments involving [range of motion], [s]trength, [p]osture, [p]ain,"

4

limiting her "ability to perform these tasks").) As such, Marisela contends the ALJ's symptom assessment is patently erroneous. (R. 14, Pl.'s Br. at 15.)

The government disagrees, arguing that while Marisela insists that the ALJ found she had no limitations with "cleaning, dusting, washing overhead, overhead tasks," the ALJ in fact only noted Marisela's improvements in performing these tasks, as reflected in the physical therapy record. (R. 18, Govt.'s Mem. at 8-9 (citing A.R. 911).) Said differently, the ALJ was focused on the disparity between Marisela's extreme limitations and the improvement noted in the physical therapy record. (Id.) To be sure, Marisela testified that at home she does not "do anything" other than "watch TV and have lunch and sit at the table with my husband for a bit." (R. 18, Govt.'s Mem. at 8 (citing A.R. 26-27, 54, 59, 61-62 ("Basic things like cleaning the house, doing dishes. I can't do that anymore . . . I can't function. I can't work. I can't do nothing in the house.").) The physical therapy records paint a different picture, showing that even with continued deficits, Marisela's improvements "increased [her] ability to perform these tasks: cleaning, dusting, washing overhead, overhead tasks." (Id. at 9 (citing A.R. 911).) The ALJ "reasonably recognized this inconsistency," as the government asserts. (Id.)

A symptom assessment need not be "flawless," and here it was not "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)). Indeed, the ALJ cited specific findings and evidence to support her analysis, and the court declines to hold her to something higher than the governing substantial evidence standard. *See Warnell*, 97 F.4th at

5

1053 (noting that an ALJ is "subject to only the most minimal of articulation requirements").

**B.     Physical RFC**

Marisela also argues that the ALJ failed to supply substantial evidence to support her physical RFC assessment. (R. 14, Pl.'s Br. at 11-14; see also A.R. 25.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When developing the RFC, the ALJ must incorporate a claimant's limitations, including those that are not severe, and may not dismiss a line of evidence that is contrary to the ruling. *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether she considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and her conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

The ALJ here found Marisela capable of light work such that she can lift and carry up to 20 pounds, "frequent[ly] reach[] in all directions with [her] right, dominant upper extremity and occasional[ly] handl[e] and finger[] bilaterally." (A.R. 25.) Marisela contends the evidence requires greater restrictions to accommodate the effects of her carpal tunnel and elbow impairments. (See R. 14, Pl.'s Br. at 12-13.) She points to evidence that she says refutes her ability to lift and carry up to 20 pounds and occasionally handle and finger. (Id. at 12.) For example, Marisela

acknowledges that an initial electromyography ("EMG") procedure was normal but points out that a second EMG was abnormal. (R. 14, Pl.'s Br. at 12 (citing A.R. 26, 923).) She says the ALJ mentioned only the first EMG, but the ALJ also discussed the results of the second EMG, including that it revealed "moderate carpal tunnel syndrome on the right side." (Compare id. at 12, with A.R. 27.) Despite the moderate finding, the ALJ explained that additional restrictions were not warranted because Marisela pursued only "conservative[]" treatment with physical therapy and a brace, physical therapy notes showed she could "clean and dust" using her hands, and she "did not complain of carpal tunnel symptoms or elbow symptoms" at her January 2022 annual physical. (A.R. 27 (citing to id. at 469, 773).) The ALJ accepted that Marisela had poor grip strength during the consultative examination the same month but found that result was an "outlier compared to the remainder of her exams." (Id.) Thus, the ALJ adequately grappled with the relevant evidence.

Marisela next challenges the ALJ's characterization of tests revealing "4/5 to 5/5 strength" in her right elbow as an indication that Marisela did not "show significant deficits" in that extremity. (R. 14, Pl.'s Br. at 12.) But that was not the only evidence the ALJ relied on when setting the RFC. Indeed, the ALJ noted that both Marisela's primary care physician and orthopedist documented such results, and examinations showed "normal range of motion of the right elbow," along with "normal strength and examination." (A.R. 26; see also id. at 398, 402, 406, 426, 440, 450, 461, 477, 481, 485, 489 ("Strength Right: pronation [sic]/5 and supination 4/5 and flexion 5/5 and extension 5/5.").) As a result, the ALJ deemed these results to be "good to

7

great," (id. at 26), which is largely consistent with the language set forth in applicable regulations, (see R. 18, Govt.'s Mem. at 4 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(C)(2)(c), explaining that strength measured at 4/5 is "good" and at 5/5 is "normal")).  Marisela nonetheless asserts that the evidence contradicts such a conclusion, citing records revealing "decreased wrist strength," "reduced grip strength," "decreased upper extremity strength," "decreased motor control," and "grip strength . . . [of] 3/4 in both hands." (R. 14, Pl.'s Br. at 12 (citing A.R. 403, 466, 468, 470, 869).) However, these records do not negate the ALJ's elbow strength findings. (Compare id., with A.R. 26, 398, 402, 406, 426, 440, 450, 461, 477, 481, 485, 489.) And in any event, Marisela's argument amounts to a request for this court to reweigh the evidence and substitute its judgment for the ALJ's, which it cannot do. *See Deborah M.*, 994 F.3d at 788.

When assessing Marisela's RFC, the ALJ also considered Marisela's symptoms and the extent to which they were "consistent with the objective medical evidence and other evidence," (A.R. 25), including medical opinion evidence. Here, no medical source found that greater restrictions than those in the RFC are needed, and the state agency reviewing physician opined that Marisela could use her hands occasionally. (See R. 18, Govt.'s Mem. at 1.) Indeed, in January 2022 the reviewing physician considered Marisela's record, including the consulting examiner's findings, and opined that Marisela was "limit[ed] to occasional fine/gross manipulation [bilaterally]." (A.R. 91-92.) The ALJ found this opinion "persuasive" because Marisela's "EMG, performance at exams, and complaints" supported it. (Id. at 28

8

(noting that the state agency reviewing physician at the initial level found Marisela capable of "medium" work, but the ALJ deemed this opinion "not persuasive" because "additional evidence received since the time [the initial] opinion was rendered support[ed] additional limitations").) Marisela does not challenge the ALJ's medical opinion evaluation and therefore has forfeited any argument that the ALJ improperly relied on the state agency physician's opinion. (See R. 18, Govt.'s Resp. at 7 (citing *Brown v. Colvin*, 661 Fed. Appx. 894, 895 (7th Cir. 2016).) In short, Marisela fails to satisfy her burden of showing that "specific limitations affected [her] ability to work," *Kruckow v. Bisignano*, No. 23-2433, 2026 WL 27807, at *3 (7th Cir. Jan. 5, 2026).

## Conclusion

For the foregoing reasons, Marisela's remand request is denied, and the Commissioner's decision is affirmed.

                                          **ENTER:**

                                          */s/ Young B. Kim*
                                          **Young B. Kim**
                                          **United States Magistrate Judge**